IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MARY M. HEWITT,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CV 17-145-BLG-TJC<br><br><br>**ORDER** |

On October 30, 2017, Plaintiff Mary M. Hewitt ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disabled widow's benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. (Doc. 2.) On March 27, 2018, Defendant filed the Administrative Record ("A.R.") (Doc. 6).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 11.) The motion is fully briefed and ripe for the Court's review. (Docs. 11-13.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds that the case should be **REMANDED** for further administrative proceedings.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income benefits on March 22, 2016, and an application for disabled widow's benefits on April 14, 2016.  (A.R. 233-248.)  Plaintiff alleged she has been disabled and unable to work since December 23, 2015.  (A.R. 233.)  The Social Security Administration denied Plaintiff's application initially on June 24, 2016, and upon reconsideration on November 18, 2016.  (A.R. 157, 169.)

On December 1, 2016, Plaintiff filed a written request for a hearing.  (A.R. 172.)  Administrative Law Judge Michele Kelley (the "ALJ") held a hearing on April 4, 2017 (A.R. 36-75).  On April 19, 2017, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 18-30.)

Plaintiff requested review of the decision, and on August 30, 2017, the Appeals Council denied Plaintiff's request for review.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.

///

///

///

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.      Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180

F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the

Commissioner must "show that the claimant can perform some other work that

exists in 'significant numbers' in the national economy, taking into consideration

the claimant's residual functional capacity, age, education, and work experience."

*Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.    FACTUAL BACKGROUND

Plaintiff claims to suffer from the severe impairments of anal cancer,

hemochromatosis, cirrhosis, diabetes, depression, fibromyalgia, thyroid nodule,

gastroesophageal reflux disease, chronic pain, and fatigue.  (A.R. 268.)  She asserts

that these impairments render her incapable of performing substantial gainful

employment.

### A.    The Hearing

A hearing was held before the ALJ on April 4, 2017, in Billings, Montana.

(A.R. 36.)  Plaintiff testified she was diagnosed with rectal cancer in December

2015, and was later diagnosed with thyroid cancer in 2016.  (A.R. 46.)  She

underwent chemotherapy and radiation for her rectal cancer from January 10, 2016

until February 26, 2016.  (A.R. 46-47.)  She would also later have her thyroid

removed in May 2016.  (A.R. 48.)

Prior to her cancer diagnosis, Plaintiff worked for Crossmark in 2014 and

sold a product for Mary Kay in 2016.  (A.R. 43-44.)  She also worked for several

months in 2015 making lefsa, but she stopped when she was diagnosed with cancer. (A.R. 45.) After her cancer treatment, she began feeling better and mentored two children at her house after school or on weekends. (A.R. 48- 50; 52-54.) She testified the job was flexible and allowed her to cancel on days she felt badly. (A.R. 49.) The job ended in November 2016 for reasons not related to her impairments. (A.R. 54.)

Plaintiff also testified about her symptoms during and after her cancer diagnoses and treatment. (A.R. 46-48.) She described her symptoms during her cancer treatment as a burning sensation throughout her body in conjunction with diarrhea, rawness, an open sore, nausea, fatigue, hair-loss, severe pain, and brittle teeth. (A.R. 46-48.) She stated that after having a thyroidectomy, she also lost her voice, experienced hot flashes, sweating, and chills. (A.R. 50.)

Plaintiff also testified that she developed bowel problems and fecal incontinence after her treatment, which remain ongoing. (A.R. 50-51.) She testified that beginning in June 2016 her diarrhea and nausea became a daily issue. *Id.* Her diarrhea begins in the morning and often results in incontinence, which has increased in frequency. *Id.* Plaintiff stated there is nothing she can do to prevent her incontinence. (A.R. 52.) She explained it comes unexpectedly, requiring her to change her clothes when they become soiled. (A.R. 52.) The sudden onset of her diarrhea has resulted in her inability to reach the toilet quickly enough, even

when she is already in the bathroom. (A.R. 52.) Plaintiff explained the frequency of her diarrhea requires her to be in the bathroom for a couple of hours every day. (A.R. 56.)

Plaintiff also testified she suffers from fatigue and must lie down often. *Id.* Plaintiff lives in Saint Marie, Montana, which is an abandoned Air Force base 20 miles north of Glasgow, Montana. (A.R. 62.) She testified she must motivate herself, take pain medicine, and plan her trip before going into Glasgow. (A.R. 56.) She stated that she can go into town for two hours if she takes these precautions. *Id.* She explained her limitations come from continual nausea, arthritis pain, back pain, knee pain, shoulder pain, and hip pain. (A.R. 57.)

As to her mobility and strength, Plaintiff testified she can take out her garbage and bring in her groceries, sometimes after resting. (A.R. 58.) She also stated she can carry a gallon of milk, a case of soda, and a five-gallon water jug, but not consistently. *Id.* Plaintiff also explained she can stand in one place long enough to wash her dishes, which usually takes ten to fifteen minutes. (A.R. 58-59.) She can walk about half a mile slowly. (A.R. 59.) She frequently alternates between sitting, rocking, and standing due to arthritic pain. *Id.*

Finally, plaintiff testified that she can only be on her feet about two hours per day, and only when she takes her pain medication. (A.R. 61.) But she testified she can only take one or two pain pills per day because they cause stomach problems.

*Id.*  Lastly, she indicated she cannot be around cleaning solutions due to her cancer and cirrhosis diagnoses.  (A.R. 71.)

## B. Medical Evidence

### 1. Brett T. Murray, MD

Dr. Murray is a general surgeon who treated Plaintiff on several occasions from April 2016 through December 2016 after she began chemoradiation for anal cancer.  (A.R. 379-383, 634-636, 747-751, 774-778.)  Dr. Murray initially noted Plaintiff had problems with nausea, bloating, and anal sensitivity.  (A.R. 379-383.)  He performed a physical examination of the Plaintiff and found she had skin changes in her perineal and perianal areas, no masses or lesions, and a scar-like area.  (A.R. 383.)

Plaintiff saw Dr. Murray again on June 16, 2016, complaining of abscesses in her perineal area.  (A.R. 634.)  Dr. Murray noted the abscesses were "continuously bothering her, particularly when she is seated for long periods of time." *Id.*

On September 13, 2016, Plaintiff saw Dr. Murray for follow-up and reexamination.  (A.R. 747.)  Dr. Murray noted Plaintiff had "no specific complaints about her bowels or any palpable nodules in the perianal area or the groin region." *Id.*  He went on to state, however, that "she does have intermittent loose stools and some drainage." *Id.*  Dr. Murray performed a rectal exam and

noted Plaintiff has "some chronic skin changes from radiation with some areas of decreased pigmentation." (A.R. 750-51.) He also documented a loss of rectal tone. (A.R. 751.) Nevertheless, he found no obvious suspicion of recurrence of disease, and assessed Plaintiff as "doing reasonably well with a long history of cancers." (A.R. 751.)

Plaintiff saw Dr. Murray again on December 15, 2017 for a follow-up visit regarding her anal cancer treatment. (A.R. 774.) Dr. Murray noted Plaintiff was experiencing intermittent fecal soilage. *Id.* He documented that "she initially has firm to hard stools in the morning and then later in the day has further bowel movements that are more soft and culminating, and some fairly liquid bowel movements. That tends to be when she has the soilage." *Id.* He performed a rectal exam and noted some atrophic skin changes, no discrete lesions, some tenderness and fibrosis, slightly hypertonic tone, hypervascularity, and some scarring. (A.R. 778.) Dr. Murray assessed Plaintiff as doing well post-chemoradiation, but referred her to Dr. Zins, a gastroenterologist, to assess her abdominal discomfort and bowel issues. *Id.* With respect to her fecal soilage, Dr. Murray explained "the fact that radiation treatment plus the cancer treated to now become a scar causes some irregularity of the sphincter and would predispose to some leakage . . ." *Id.*

///

### 2.     Michael T. Kidd, MD

Dr. Kidd specializes in hematology and oncology.  He treated Plaintiff from January 2016 through March 2017.  (A.R. 470; 831.)  On January 6, 2016, Plaintiff complained of daily sharp anal pain, abdominal discomfort, but no diarrhea.  (A.R. 471.)  On January 15, 2016, Plaintiff complained of vomiting after eating and heartburn.  (A.R. 432.)

Plaintiff saw Dr. Kidd again On February 15, 2016.  Her main complaint was anal pain, dysuria, and vaginal discharge.  (A.R. 401.)  She also complained of warm flashes and chills, but denied fevers, nausea, vomiting, and overt diarrhea. *Id.*

Plaintiff visited Dr. Kidd again on March 29, 2016.  (A.R. 387.)  He noted Plaintiff's most predominant symptom is abdominal discomfort, resulting in liquid bowel movements, nausea, and vomiting.  *Id.*  He also noted Plaintiff's liquid bowel movements improve over the course of two to four days.  *Id.*  Dr. Kidd performed a rectal exam and noted an ulcerated area in the anal region, small amounts of blood, and a small hemorrhoid.  *Id.*  He recommended Plaintiff use Aquaphor and take sitz baths for the ulceration.  *Id.*

On May 10, 2016, Dr. Kidd reassessed Plaintiff.  (A.R. 575.)  He noted her fatigue, lack of appetite, general joint pain, stress, and stiffness.  *Id.*  Plaintiff denied any nausea, vomiting, diarrhea, or constipation.  *Id.*

On August 9, 2016, Dr. Kidd stated Plaintiff's "bowel has not completely come back to normal." (A.R. 599.) Dr. Kidd explained, "she has a bowel movement in the morning, which is solid, and subsequently at 10 o'clock in the morning, has watery stool and is fine after that." *Id.* He continued, "she has occasional incontinence." *Id.*

Plaintiff visited Dr. Kidd again on October 20, 2016. (A.R. 763.) He described Plaintiff as "doing fairly well and recovering." *Id.* But he also noted she complained of hip pain and urgency with bowel movements and incomplete stool passage. *Id.* Plaintiff denied any nausea, vomiting, diarrhea, or constipation. *Id.*

On December 16, 2016, Dr. Kidd stated, "regarding current symptoms, she continues to struggle." (A.R. 780.) He described Plaintiff's complaints of food intolerance, nausea, epigastric pain, and diarrhea. (A.R. 781.) "With regard to her bowels, she does have diarrhea alternating with formed stools throughout the day. She typically has up to 10 bowel movements a day, which are small. Occasionally, one will have bright red blood per rectum on the surface of the stool." *Id.* He also noted Plaintiff's bowel movements were painful and incomplete. *Id.* He concurred that Plaintiff should undergo a gastroenterology assessment. (A.R. 783.)

Plaintiff saw Dr. Kidd again on March 16, 2017. (A.R. 832.) Plaintiff reported she had significant loose stools following her colonoscopy in February, but that they formed up a little and were less watery. (A.R. 833.) Dr. Kidd noted,

however, that "she has had irrigation and inflamed changes in her rectal area, which was very painful and red." *Id.* He performed a rectal exam and noted, slight skin darkening, no fissures, no inflammatory changes present, no blood, and "[t]he anal sphincter seems a bit loose as far as tone." (A.R. 834.)

### 3. Dr. Bradley J. Zins, MD

Plaintiff was referred to gastroenterologist, Dr. Zins, for assessment of her abdominal pain and bowel symptoms. (A.R. 778, 783.) On January 18, 2017, Dr. Zins noted Plaintiff's "bowels have gotten a bit more challenging to deal with. She states that she usually has a couple hours of moving the bowels in the morning where she will have stool starting harder and then they go to loose and even diarrheal. She has up to 10 stools in that time period, most of which tend to be formed." (A.R. 785.) He also noted Plaintiff's bowel movements are accompanied by cramping but there is "no real blood." *Id.* Plaintiff also complained of abdominal pain in her right upper quadrant, as well as dysphagia problems. *Id.*

To treat her abdominal pain, Dr. Zins recommended a trigger point injection into her abdominal wall. (A.R. 786.) If that did not alleviate her pain, he suggested a gastric emptying study. *Id.*

Regarding her bowel issues, he recommended a colonoscopy. *Id.* He noted some of her issues were "probably caused by the fact that she has had this radiation

to the perianal region recently from the anal cancer, and that could be causing some of the problems with evacuation currently." *Id.*

The colonoscopy was performed on February 22, 2017. (A.R. 813.) Dr. Zins found hemorrhoids, polyps in Plaintiff's colon, and mild diverticulosis in Plaintiff's sigmoid colon. *Id.* The polyps were removed. *Id.*

### 4. Dr. Kari V. Kale

Dr. Kari Kale is an internal medicine specialist who provides care to Plaintiff. Plaintiff saw Dr. Kale on May 15, 2015 regarding her GERD and back pain. (A.R. 508.) Plaintiff visited Dr. Kale on December 23, 2015 regarding chronic pain in her knees, and lower back. (A.R. 485.) On February 7, 2017, Plaintiff again visited Dr. Kale, this time complaining of joint pain and abdominal pain. (A.R. 799.) Dr. Kale noted Plaintiff reported nausea, epigastric discomfort, several soft stools per day without blood, and anxiety. *Id.* On February 10, 2017, Dr. Kale performed a gastric emptying study, and concluded Plaintiff was within the normal limits for gastric emptying time for solids. (A.R. 804.)

### 5. John M. Schallenkamp, MD

Dr. Schallenkamp specializes in radiation oncology and has treated Plaintiff on multiple occasions for her anal cancer and thyroid cancer. On January 6, 2016, Dr. Schallenkamp noted Plaintiff had issues with nausea and bowel changes after beginning chemoradiotherapy. (A.R. 454.) On January 27, 2018, he described

Plaintiff as improving, with her bowel movements becoming more normalized. (A.R. 455.)  In February, however, Dr. Schallenkamp found Plaintiff fatigued, having a bit more diarrhea, and expressing discomfort in her perianal region.  (A.R. 457.)  A perirectal examination conducted on February 10, 2016 showed "some postradiation change."  (A.R. 459.)  She completed chemoradiation on February 24, 2016.  (A.R. 463.)

On April 12, 2016, Dr. Schallenkamp noted Plaintiff's bowels had "improved a bit" and she was being seen for a thyroid exam and biopsy.  (A.R. 377.)  Plaintiff's thyroid biopsy resulted in findings consistent with thyroid cancer.  (A.R. 384.)  On May 18, 2016, Plaintiff had a thyroidectomy.  (A.R. 548.)

On May 19, 2016, Dr. Shallenkamp noted Plaintiff still had discomfort and "occasional loose stool, but is continuing to notably improve."  *Id.*  He also noted she was fatigued.  *Id.*  On June 2, 2016, he found Plaintiff "doing fairly well" with some fatigue and discomfort in her neck.  (A.R. 661.)

On October 20, 2016, Dr. Schallenkamp stated no evidence of her anal caner was found following her treatment.  (A.R. 759.)  He did note that small nodules were found in her chest.  *Id.*  Plaintiff reported she was "fairly well."  *Id.*  Dr. Schallenkamp stated the only concern she discussed was weakness in her hips.  *Id.* On January 19, 2017, an ultrasound revealed no evidence of recurrent thyroid cancer.  (A.R. 796.)

## C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (A.R. 21.)  Second, the ALJ found the Plaintiff had the severe impairments of asthma, chronic obstructive pulmonary diseases, disorder of the lumbar spine, and degenerative joint disease of both hips. *Id.*  The ALJ noted Plaintiff alleged other severe impairments, including cancer, but the ALJ found them to be non-severe.  *Id.*

Third, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (A.R. 23.)  Fourth, the ALJ stated Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: she can lift, carry, push, or pull 10 pounds frequently and 20 pounds occasionally; can stand and walk about 6 hours of an 8-hour workday; can sit about 6 hours of an 8-hour workday; can frequently climb ramps and stairs; can frequently balance, stoop, kneel, or crouch; can occasionally climb ladders, ropes, or scaffolds; can occasionally crawl. She must avoid concentrated exposure to fumes, odors, dust, gases, or poor ventilation. Further, the claimant needs to change positions every 30 minutes while staying on task.

(A.R. 24.)

The ALJ next found Plaintiff capable of performing her past relevant work as a demonstrator.  (A.R. 28.)  The ALJ also found other jobs exist in the national

economy that Plaintiff can perform based on her age, education, work experience, and RFC.  (A.R. 29.)  Thus, the ALJ found Plaintiff was not disabled.  (A.R. 30.)

## IV.  DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1) failing to properly credit her testimony; (2) improperly discounting the findings and opinions of her medical providers; (3) failing to incorporate cancer and incontinence as impairments; and (4) failing to incorporate all of her impairments into the vocational consultant's hypothetical questioning.  (Doc. 11.)

### A.    The ALJ's Credibility Determination

Plaintiff argues the ALJ's credibility determination was erroneous because the ALJ failed to provide specific germane reasons for rejecting her testimony.  (Doc. 11 at 7.)  The Commissioner argues the ALJ gave clear and convincing reasons to discredit Plaintiff's claims of disability.  (Doc. 12 at 7-8.)

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear, and convincing reasons" for doing so.  *Id.*  "In

17

order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010.) "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834)). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015.) The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases."' *Garrison v. Colvin*, 7559 F.3d 995, 1015 (9th Cir. 2014.)

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques; (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Chaudry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004.) However, the ALJ may not reject the claimant's statements about the intensity and persistence of their pain or other symptoms "solely because the available objective

medical evidence does not substantiate [the claimant's] statements."  20 C.F.R. § 404.1529(c)(2).

Here, the first step of the credibility analysis is not in issue.  The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and there is no argument that Plaintiff is malingering.  (A.R. 26.)  Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms.  The Court finds the ALJ failed to do so, particularly with respect to Plaintiff's testimony regarding her bowel and incontinence problems secondary to her cancer treatment.

Much of the hearing before the ALJ was focused on Plaintiff's bowel and incontinence problems.  (A.R. 38-75.)  As discussed above, Plaintiff underwent a course of chemotherapy and radiation between January 10, 2016 and February 26, 2016.  Plaintiff testified she began to experience difficulty with her bowel in June 2016, which often resulted in fecal incontinence.  (A.R. 51.)  Plaintiff testified that these problems are unresolved.  In general, she is required to "hit the bathroom" the first thing after waking in the morning for a bowel movement.  *Id.*  She then has smaller, softer stools, which eventually turn to diarrhea by 10:00 or 11:00.  *Id.* Plaintiff explained that she does not have the ability to control the diarrhea, stating "my muscles were – don't control anymore, the sphincter muscle, so I can't always

feel it, or I can't stop it."  *Id.*  In fact, she testified she soiled her pants twice before the hearing and had to change her clothes.  (A.R. 52.)  She testified she "couldn't do nothing about it" even though she "was right there in the bathroom, and [she] couldn't get to the toilet."  *Id.*

The ALJ did not consider Plaintiff's testimony regarding her fecal incontinence in determining her RFC, and failed to establish specific, clear and convincing reasons for rejecting the testimony.  The ALJ generally found, "the claimant's medical records do not substantiate the claimant's subjective allegations of limitations causing total disability."  (A.R. 26.)  Specifically with respect to Plaintiff's incontinence and bowel issues, the ALJ stated "[t]he claimant's allegation of uncontrolled bowel movements with frequent staining are not objectively explained or noted."  (A.R. 26.)  The Court disagrees on both counts. Plaintiff's bowel and incontinence problems are well documented in the medical record and are explained with objective findings.

Dr. Kidd and Dr. Bradley both documented Plaintiff's bowel and incontinence problems following her cancer and radiation treatments, and both recommended that she see a gastroenterologist.  (A.R. 778, 783.)  She saw gastroenterologist Dr. Zins, and he documented Plaintiff's history of fecal soilage, and noted that after chemoradiation Plaintiff's "bowels have gotten a bit more challenging to deal with" requiring her to spend "a couple of hours" in the

bathroom each morning. (A.R. 785.) Dr. Zins further reported that her "problems with evacuation" were probably caused by radiation treatments to the perianal region for her anal cancer. (A.R. 786.)

The ALJ also provided no support for her conclusion that Plaintiff's incontinence was not objectively explained. There are multiple findings in the record of post-radiation changes to plaintiff's rectum, and medical explanations as to how those changes can result in Plaintiff's incontinence. *See e.g.*, A.R. 786 (irregularity of her sphincter predisposed her to leakage); A.R. 834 (loose anal sphincter tone on rectal exam); A.R. 750-51 (rectal exam showing chronic skin changes from radiation and decreased tone on rectal exam); A.R. 778 (rectal exam reveals atrophic changes in the skin of the perianal area).

Moreover, the portions of the record the ALJ cites in support of her conclusions do not contradict Plaintiff's testimony. For example, the ALJ stated that the medical records show Plaintiff "was 'doing reasonably well' with post-treatment and she did not appear to have any functional problems related to her past episodes of cancer in September 2016." But the same medical record cited by the ALJ specifically notes Plaintiff's "loose stools" and "drainage," and documents a loss of tone on rectal examination. (A.R. 747, 751.)

The ALJ also states that Plaintiff's "clinical notes indicate the claimant appeared to be improved and in generally good health, with some epigastric and

abdominal pain associated with bloating." In support of this conclusion, the ALJ cites Ex. C13F, which is a 69-page exhibit of records from the Billings Clinic. Not only is such a generalized citation insufficient to provide specific, clear and convincing reasons to reject Plaintiff's testimony, the exhibit contains several entries documenting the Plaintiff's bowel and incontinence problems. For example, Dr. Kidd noted her "urgency with bowel movements" on October 20, 2016. (A.R. 763). Dr. Murray also documented the same history of incontinence Plaintiff provided to the ALJ at the hearing, noting that she has liquid bowel movements that result in fecal soilage. (A.R. 774, 778.) Dr. Murray also discussed with Plaintiff how scarring from cancer treatment causes irregularity of the sphincter and would predispose her to this condition. (A.R. 778.)

Finally, the ALJ references unspecified lab work, a CT scan and biopsy, a gastric emptying test, and an abdominal trigger point injection. But the ALJ does not attempt to explain – and it is certainly not apparent from the records – how these results in any way contradict Plaintiff's testimony regarding her fecal incontinence. In fact, it appears that none of these tests were directed to her incontinence issues. The gastric emptying test and abdominal trigger point injections, for example, were intended to evaluate and treat Plaintiff's right upper quadrant pain, not her bowel and incontinence problems. (A.R. 786, 798, 804.)

Therefore, the record does not support the ALJ's credibility finding that Plaintiff's bowel and incontinence problems "are not objectively explained or noted"; the record directly contradicts that finding.

The remainder of the ALJ's credibility discussion consists of a summary of medical records concerning Plaintiff's respiratory impairment and orthopedic problems. (A.R. 26-27.) But in *Brown-Hunter*, 806. F.3d. 487, 489 (9th Cir. 2015), the Ninth Circuit made clear that an ALJ fails to provide specific, clear and convincing reasons for rejecting a claimant's testimony by merely reciting the medical evidence supporting the ALJ's RFC finding. The court found a summation of the medical record does not equate to "providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* at 494 (emphasis in original.) The ALJ must specify which of the claimant's statements were not credible and which evidence contradicted that testimony. *Id.* at 493-494.

Here, the ALJ failed to specify which parts of Plaintiff's testimony she found not credible and support that finding with the record. The medical records cited by the ALJ do not discredit Plaintiff's testimony. Accordingly, the Court finds the ALJ's credibility finding is not supported by specific, clear, and convincing reasons. This was legal error.

///

## B. The ALJ's Evaluation of the Medical Opinion Evidence

Plaintiff argues the ALJ improperly discounted the findings and opinions of her treating physicians. It appears Plaintiff is specifically referring to the findings and opinions of Dr. Kidd, Dr. Murray, and Dr. Kale. (Doc. 11 at 16.) The Commissioner counters the ALJ reasonably evaluated the medical opinion evidence.

Opinions of treating physicians may only be rejected under certain circumstances. *Lester v. Chater*, 81. F.3d 821, 830 (9th Cir. 1995.) The ALJ must provide "clear and convincing reasons" for discounting the uncontradicted opinion of a treating physician. *Id.* The ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record" to discount a treating physician's controverted opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Nevertheless, treatment notes, in general, do not constitute medical opinions. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, and what you can still do despite impairment(s), and your physical or mental restrictions."). Dr. Kidd, Dr. Murray, and Dr. Kale did not offer opinions regarding Plaintiff's limitations or ability to work. Therefore, their treatment notes are not medical

opinions the ALJ must weigh. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions."). Accordingly, while the ALJ discussed the treatment notes in her decision, she did not err by failing to provide clear and convincing reasons for discounting them.

### C. The ALJ's Failure to Consider Plaintiff's Incontinence and Cancer as Impairments

Plaintiff argues the ALJ failed to consider Plaintiff's cancer and bowel incontinence as impairments. In response, the Commissioner argues that while cancer and incontinence were not found to be severe at step two in the sequential evaluation, the ALJ found Plaintiff had several other severe impairments, and therefore Plaintiff was not prejudiced.

At step two in the sequential evaluation process, the ALJ must decide whether claimant suffers from a severe impairment or combination of impairments, that has lasted for more than 12 months. 20 C.F.R. § 416.920. "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996.)) The step

two "inquiry is a de minimis screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290.

The ALJ found the Plaintiff's anal and thyroid cancers were not severe impairments because they "significantly resolved in less than 12 months without causing long-term impairment." (A.R. 21.) The ALJ is correct that the treatment for Plaintiff's cancer concluded in less than 12 months, and there is no evidence of recurrence. As discussed above, however, the ALJ did not consider the residual impairment of Plaintiff's cancer and cancer treatment, and discounted Plaintiff's testimony regarding her subsequent bowel and incontinence symptoms. On remand, the ALJ will be required to determine whether those impairments are severe after conducting an appropriate credibility analysis.

But regardless of the ALJ's severity determination, those impairments must still be considered. Finding an impairment non-severe at step two does not relieve the ALJ from further considering an impairment at step four when determining the Plaintiff's RFC. 20 C.F.R. § 404.1545(a)(5)(i). The ALJ was required to consider all of Plaintiff's impairments in assessing her RFC, including her impairments that are not severe. *See e.g., Smolen*, 80 F.3d at 1290 ("The ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is

required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. Even though a non-severe "impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.") (citing Social Security Ruling 96-8p)).

Here, the ALJ did not consider Plaintiff's bowel and incontinence impairments in assessing Plaintiff's RFC. The ALJ suggested she did so, stating, although Plaintiff's "condition is cancer free status-post treatment, this and orthopedic and respiratory problems are accounted for within the residual functional capacity by restriction to light exertion, changing positions, [and] limited postural activities." (A.R. 28.) While these limitations may accommodate Plaintiff's orthopedic and respiratory difficulties, they do not in any way address Plaintiff's requirement that she have immediate access to toilet facilities, together with frequent and extended periods during each work day to attend to her bowel and incontinence problems. Instead, the ALJ dismissed this impairment by stating that, even if Plaintiff had uncontrolled bowel movements and frequent staining, "adult briefs and normal breaks would adequately accommodate any such incidences." (A.R. 26.) But there is nothing the record to support such a conclusion. There is no medical or vocational finding in the record which indicates these symptoms can be simply remedied with the use of "adult briefs."

In addition, the ALJ's failure to consider Plaintiff's bowel and incontinence problems is not harmless. Plaintiff testified that she is required to spend approximately two hours per day attending to her bowel and incontinence needs and may have 10 bowel movements per day. In response to the ALJ's third hypothetical scenario, the vocational expert testified that if the hypothetical individual was off task 20 percent of the day, she could not perform Plaintiff's past jobs, or any other jobs in the national economy. (A.R. 69.) Similarly, the vocational expert testified that if a person would require as many as 10 breaks throughout the work-day, lasting 5-30 minutes each, there would be no jobs for that individual. (A.R. 71.) Therefore, had the ALJ credited Plaintiff's testimony and considered her bowel and incontinence impairment in determining Plaintiff's RFC, the ALJ may have determined that Plaintiff is disabled. Accordingly, the Court finds the ALJ erred in considering Plaintiff's incontinence.

### D. The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocation Expert.

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion has no evidentiary value. *Embrey*, 849 F.2d at 422.

Here, the ALJ concluded claimant is capable of performing her past work as a demonstrator, and further concluded that Plaintiff could perform other work in the national economy. (A.R. 29.) Plaintiff argues the vocational testimony cannot be relied on because it failed to account for all her limitations. As discussed above, the Court concludes the ALJ failed to explain her reasons for discounting Plaintiff's testimony and failing to consider Plaintiff's bowel incontinence as an impairment. Accordingly, these errors may have affected the hypothetical the ALJ relied upon, and in turn, the ALJ's determination at steps four and five. Therefore, the Court finds the ALJ's determinations at steps four and five are not supported by substantial evidence.

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to reverse the ALJ's decision and grant her benefits. (Doc. 13 at 12.) "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a

rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall re-evaluate Plaintiff's credibility. The ALJ shall further consider the evidence of Plaintiff's incontinence, and reconsider whether Plaintiff can perform work in the national economy based upon a hypothetical that incorporates all her impairments and limitations supported by the record.

## VI.    CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision is **REVERSED**, and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

DATED this 6th day of March, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge